# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**SEALED**

```
FILED
Dec 13, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
```

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DANIEL BATTENFIELD | ) | Case No.   1:24-mj-00140  SAB |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY RELIABLE ELECTRONIC OR TELEPHONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    January 1, 2016-July 24, 2024    in the county of    Fresno    in the
Eastern    District of    California    , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 922(a)(1)(A) | Dealing in Firearms without a License |
| 18 USC 1001 | Making Materially False Statements to Federal Agents |
| 18 USC 922(a)(6) | Making False Statements in Connection With The Purchase of Firearms |
| | |
| | Maximum penalty for each count: |
| | 5 years' imprisonment, $250,000 fine, 3 years supervised release, $100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

ATF SA Cortland Collins
*Printed name and title*

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P.
4.1 by telephone

Date:   **Dec 13, 2024**

*Judge's signature*

City and state:          Fresno, CA                    Hon. Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

6    UNITED STATES OF AMERICA,                    CASE NO.

7                        Plaintiff,               AFFIDAVIT OF SPECIAL AGENT
                                                  CORTLAND G. COLLINS AS TO PROBABLE
8            v.                                   CAUSE

9    DANIEL BATTENFIELD,

10                        Defendant.

11
12

13    I, Cortland G. Collins, being sworn, depose and state the following:

14                        **I.    INTRODUCTION**

15        1.    This Affidavit is in support of an arrest warrant for Daniel BATTENFIELD (hereinafter

16    referred to as BATTENFIELD) for violation of 18 U.S.C. § 922(a)(1)(A), dealing firearms without a

17    license, 18 U.S.C. § 1001, making materially false statements to a federal agent, and 18 U.S.C. §

18    922(A)(6), making materially false statements on ATF forms or during purchase of firearms.

19        2.    The information contained in this Affidavit is based upon my personal observations and

20    training and, where noted, information related to me by other law enforcement officers and/or agents.

21        3.    As stated further in this Affidavit, law enforcement officers have gathered evidence to support

22    probable cause that BATTENFIELD unlawfully dealt firearms without a license, made false statements

23    to a federal agent, and made false statements on ATF forms and during purchase of firearms.

24                        **II.    AFFIANT'S BACKGROUND**

25        4.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

26    and have been so employed since August of 2021.  I am currently assigned to the ATF Fresno Field

27    Office, specializing in investigations involving the illegal possession of firearms and other federal

28    offenses involving firearms. In 2021, I completed the Criminal Investigator Training Program (CITP) at

the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia, in which I received the Director's Leadership Award. In 2022, I completed Special Agent Basic Training (SABT) at the ATF National Academy, at FLETC in Brunswick, Georgia.

5.     Prior to my employment with ATF, I was a sworn peace officer in the state of California, beginning in December of 2015. During that time, I was employed by the Fresno County Sheriff's Office (FSO) where I was assigned as a patrol deputy throughout the county. I was assigned to the Detective Bureau in February of 2017, where I worked on the Fresno County Multi Agency Gang Enforcement Consortium (MAGEC), where I conducted and assisted in complex gang investigations with other local, state, and federal agencies. These investigations involved crimes including homicide, unlawful firearm possession, assaults, robbery, drug trafficking, firearms trafficking, murder for hire, burglaries, and other crimes committed by gang members throughout Fresno County and surrounding areas.

6.     Prior to my employment with the Fresno County Sheriff's Office, I served in the United States Marine Corps as an Infantry Rifleman for four years. During my service, I was attached to Marine Corps Special Operations Command (MARSOC) for approximately two years. I deployed overseas on two separate occasions in support of the 13th Marine Expeditionary Unit (MEU), Operation Lantern Piston in the Philippine Islands, Operation Enduring Freedom in Afghanistan, the 31'st MEU, and Korean Defense. During my time overseas, I carried numerous weapon systems in hostile environments. Additionally, I participated in the training of over 200 Philippine Marines in combat triage, urban tactics, marksmanship fundamentals, and proficient weapons employment. I currently hold a Bachelor of Science degree in Criminology and Restorative Justice, and graduated Magna Cum Laude from Fresno Pacific University.

### III.    <u>SUMMARY OF PROBABLE CAUSE</u>

7.     Daniel BATTENFIELD, a Sanger Police Officer, sold 231 firearms between 2016 and 2024, many of which with extremely short times between the purchase of those firearms and their resale. Many of the firearms he sold were "off-roster" firearms, which are firearms that can only be purchased by a police officer in California but that can subsequently be resold at a significant profit in the secondary market.

8. Through a search of sales records and electronic devices, as well as interviews which individuals who purchased firearms from BATTENFIELD, agents learned that BATTENFIELD repeatedly sold firearms for a profit, purchasing them at market value using his status as a police officer and then reselling them for a higher price. BATTENFIELD also purchased firearms and then used his skills as an armorer to improve them before reselling them. Despite being in the business of selling firearms, BATTENFIELD did not possess a valid Federal Firearms License to be a firearms dealer. This is a violation of 18 U.C.C. 922(a)(1)(A), dealing firearms without a license.

9. On September 18, 2022, BATTENFIELD took an order for a Sig Sauer P365 Macro from J.L. He ordered that firearm himself and on an ATF Form 4473[1] he indicated untruthfully that he was buying the gun for himself rather than for J.L. BATTENFIELD later sold this firearm to J.L. on October 26, 2022. This is a violation of 18 USC 922(a)(6), making a false statement in connection with the acquisition of a firearm.

10. On July 25, 2024, and August 09, 2024, ATF agents interviewed BATTENFIELD. In the interview, he denied ever taking orders for firearms or ever selling firearms for a profit. As discussed below, these statements were not true. This is a violation of 18 USC 1001, making a materially false statement or representation to a government agent.

## IV. PROBABLE CAUSE

### Firearms records analysis shows a pattern of firearms transactions consistent with unlawful dealing in firearms

11. In August 2022, agents with the ATF began a firearm trafficking investigation through ATF's Strikeforce initiative. This case originated from the analysis of abnormally high Dealer Record of Sale (DROS) reports, indicating approximately 124 firearm transaction occurred in 2022, and four identified crime guns associated with an uncharged individual, J.L..[2] ATF reviewed DROS information obtained from California DOJ Bureau of Firearms from January 2016 through January 2022. During the review

---

[1] ATF Form 4473 is a form required by law when purchasing a firearm. Among other questions, it asks if the purchaser is buying the firearm for themselves or for another person.

[2] Crime gun is a term used for firearms recovered by law enforcement connected to some sort of criminal activity.

of the DROS information, ATF agents discovered several abnormal transactions between J.L. and Daniel BATTENFIELD.

12.     From March 27, 2019, through March 9, 2023, the DROS forms of J.L. revealed 37 private party firearm transactions (a private party transfer, or PPT) where BATTENFIELD sold J.L. firearms. Further review of the DROS transaction records revealed an address for BATTENFIELD as 5427 West La Vida Ct. Visalia, CA.

13.     On July 5, 2023, ATF Industry Operations Investigator Roger Isquierdo generated a suspicious activity report following an inspection of Smokin' Barrel Firearms located at 3222 N. Demaree, Suite D, Visalia, CA 93291. The report, dated between April 04, 2016, and December 22, 2022, stated "Police Officer Daniel Battenfield, currently with the Sanger Police Department, has purchased approximately 477 firearms, mostly handguns, mostly from the State of California's 'Off-Roster[3] List', and has private partied many of them[4]." The PPT transfer allows California residents to legally purchase firearms that they could not legally purchase new due to California law.

14.     As described extensively below, many of BATTENFIELD's transactions occurred at Smokin' Barrel Firearms. I know that individuals involved in unlicensed firearms dealing often have a friendly FFL-licensed business they use to conduct their transactions, and so the repeated use of this single facility is consistent with unlawful dealing.

---

[3] According to California Code of Regulations, title 11 section 4070, California residents may not purchase any new handgun unless it is on a "roster" or list of firearms deemed to be safe by the California Department of Justice (DOJ). It should be noted that in order for a manufacturer to have a particular model certified for the approved roster, the manufacturer must have the firearm tested at a lab which is approved by DOJ. Something as simple as a color change for a different model number requires the manufacture to have that model approved by the lab. This process is costly for the manufacturer, therefore only certain models are submitted by the manufacturers for the approved roster. Used firearms and private party transfers are exempt from this law. Active law enforcement officers are also exempt from this law. This law and private party exemptions have created a secondary market for otherwise legal firearms on the used market, where after "off-roster" firearms are purchased by a law enforcement officer they can legally be resold as a private party transfer. Because such firearms are not available to be purchased new by most residents, they resell at a substantially increased price.

[4] Private Party Transfer (PPT) is a process of selling a used firearm from one California resident to another California resident. This PPT process is essentially the same process as purchasing a new firearm from an FFL in California. The process includes a California and FBI background check, the completion of an ATF Form 4473, and a ten-day waiting period.

15. On February 20, 2024, ATF agents conducted a comprehensive review of firearm transactions completed by BATTENFIELD. From 2016 to 2024, BATTENFIELD sold **231** firearms. A yearly break down of the private party transfers, where BATTENFIELD is the seller, is as follows:

a. In 2016, BATTENFIELD conducted **5** private party sales with an average days to sale[5] of 261 days.

b. In 2017, BATTENFIELD conducted **12** private party sales with an average days to sale of 80 days.

c. In 2018, BATTENFIELD conducted **9** private party sales with an average days to sale of 105 days.

d. In 2019, BATTENFIELD conducted **25** private party sales with an average days to sale of 109 days.

e. In 2020, BATTENFIELD conducted **45** private party sales with an average days to sale of 72 days.

f. In 2021, BATTENFIELD conducted **60** private party sales with an average days to sale of 90 days.

g. In 2022, BATTENFIELD conducted **27** private party sales with an average days to sale of 68 days.

h. In 2023, BATTENFIELD conducted **36** private party sales with an average days to sale of 137 days.

i. As of May 14, 2024, BATTENFIELD conducted **12** private party sales.

16. From 2010 to 2024, BATTENFIELD purchased **268** firearms. A yearly break down of BATTENFIELD's firearms purchases, is as follows:

a. In 2010, BATTENFIELD purchased **1** firearm.

b. In 2013, BATTENFIELD purchased **1** firearm.

c. In 2014, BATTENFIELD purchased **4** firearms.

---

[5] Average days to sale is a measurement of the average time between purchasing a firearm and reselling. California requires a ten-day waiting period which is included in that time frame, so that a firearm with a days to sale of twenty days was only in the seller's possession for ten actual days.

d.  In 2015, BATTENFIELD purchased **3** firearms.

e.  In 2016, BATTENFIELD purchased **12** firearms**.**

f.  In 2017, BATTENFIELD purchased **22** firearms.

g.  In 2018, BATTENFIELD purchased **17** firearms.

h.  In 2019, BATTENFIELD purchased **33** firearms.

i.  In 2020, BATTENFIELD purchased **55** firearms.

j.  In 2021, BATTENFIELD purchased **78** firearms.

k.  In 2022, BATTENFIELD purchased **41** firearms.

l.  In 2023, BATTENFIELD purchased **51** firearms.

m.  As of May 14, 2024, BATTENFIELD has purchased **15** firearms.

17.  The totals above do not add up to 268 since BATTENFIELD purchased his own firearm multiple times throughout the years. For example, is, the firearm with serial number 24B159181 was originally purchased on January 19, 2013, sold on February 13, 2014, then repurchased on September 30, 2016.

18.  Based upon my review of ATF and California DOJ databases and upon my training and experience in firearms trafficking investigations, the total number of individual firearms purchased is 268[6].

19.  I reviewed ATF records and at no time did BATTENFIELD possess a federal firearms license, or FFL, permitting him to be in the business of dealing or manufacturing firearms.

20.  After further analysis of BATTENFIELD's transaction history, BATTENFIELD sold **six** firearms within 10 days of purchasing them, from 2018 to 2022, one of which was sold within **one** day

---

[6] This accounting is based on my review of ATF and California DOJ transaction databases. Both of those databases are inputted manually are subject to user error during inputting. For example, serial numbers 92X0040001 and 92X004001 appear to be the same firearm with a different serial number, likely a clerical error. Serial numbers BCAX263 and BCCK263 appear to be the same firearm with a different or improperly imputed serial number, likely a clerical error. While I have accounted for errors where I have discovered them, some errors are not able to be detected in database review. This accounting represents my best estimate based on my review and upon my training and experience in firearms trafficking.

of him purchasing it. Additionally, BATTENFIELD sold 35 firearms within **10-15** days of purchasing them, from 2017 to 2022.

21.    On March 28, 2024, agents reviewed all firearm transactions made by BATTENFIELD from February 13, 2010, through February 22, 2024. A review of those transactions revealed 43 firearms purchased by BATTENFIELD that were sold within 15 days[7] from the date of initially purchasing the firearm. Based on my training and experience, I know that such a short time to sale, as well as the "off-roster" nature of many of the firearms being sold, is consistent with BATTENFIELD purchasing firearms with the intention and purpose of reselling them in violation of 18 U.S.C. § 922(a)(1)(A).

22.    Following a review of BATTENFIELD's transaction history as well as investigation into individual transactions, I sought and received a search warrant for BATTENFIELD's residence, 1:24-sw-00150-EPG, issued by the Honorable Erica Grosjean, US Magistrate Judge, on July 17, 2024. The warrant was served on July 24, 2024. Eleven firearms were seized by the ATF at the time of the search warrant, along with other items of evidentiary value. Additionally, BATTENFIELD's department issued firearms, badge, keys, and patrol vehicle were turned over to Sanger Police Department. I spoke to BATTENFIELD on the phone at the time of the search warrant, who advised me that he was currently at Great Wolf Lodge in Manteca, California, and was not going to return home so I could speak to him. BATTENFIELD stated he had "approximately five" firearms with him, while he celebrated his daughter's birthday at the water park. BATTENFIELD scheduled an interview for the following day, July 25, 2024.

**BATTENFIELD Denies Illegal Firearms Dealing in A July 25, 2024 Interview (Interview #1)**

23.    On July 25, 2024, BATTENFIELD arrived at the Fresno ATF office and voluntarily surrendered his personal cellular phone and nine firearms. He agreed to speak to me. The interview room door was propped open so he could stop the interview and leave at any time. During the interview, BATTENFIELD admitted that he does not possess a Federal Firearms License (FFL). When asked how many firearms he sold, BATTENFIELD responded, "Probably 30 in the last five years."

---

[7] Because this 15 days includes the 10-day waiting period required by California law, the time between when BATTENFIELD was able to pick the gun up and when it was sold is actually under 5 days.

When asked if it would surprise him if he's sold more than 100 firearms, BATTENFIELD said, "yeah." When asked if it would surprise him if he actually sold almost 200 firearms, BATTENFIELD said, "yes." I then said, "well that's what you're doing," and BATTENFIELD responded, "Okay."

24.   BATTENFIELD stated that he did not know J.L. well and admitted to selling J.L. "probably six" firearms. BATTENFIELD said it surprised him that he actually sold J.L. at least 36 firearms. When I asked BATTENFIELD about at least six firearms sold by BATTENFIELD within 10 days of him purchasing them, BATTENFIELD responded, "I'm not sure how that would happen."

25.   Through my review of firearms records, I learned that on September 13, 2021, BATTENFIELD received a signed "Chief's letter" or "law letter" from the Chief of the Sanger Police Department. This "law letter" is a document which allows BATTENFIELD to purchase the stated department approved firearm (Beretta 92 Elite, 9mm pistol, bearing serial # LTT0011064) and skip the otherwise mandated ten-day waiting period. This firearm was purchased by BATTENFIELD the same day he received the letter, September 13, 2021, at Smokin' Barrel Firearms, and sold to J.L. three days later, on September 16, 2021. This purchase by BATTENFIELD was confirmed by records I later obtained from Smokin' Barrel Firearms; however, the receipt did not include a purchase price.

26.   When asked about a 92 Elite pistol that was sold to J.L. within three days of BATTENFIELD purchasing it, BATTENFIELD said, "No, it's in there.", indicating that he just turned it over to agents. Agents examined the firearms BATTENFIELD surrendered and serial #LTT0011064 was not among them.

27.   On March 20, 2021, BATTENFIELD purchased a Glock 45, 9 mm pistol, bearing serial #SNF547 from Smokin' Barrel Firearms. On March 30, 2021, BATTENFIELD sold this firearm to C.R. at Best Jewelry and Loan. This PPT was conducted ten days after BATTENFIELD purchased it. This firearm was not purchased utilizing a "law letter" which indicates that BATTENFIELD sold this firearm the same day he picked the firearm up after waiting the mandated ten-day waiting period. This firearm was not located in the records provided by Smokin' Barrel Firearms. As of November 19, 2024, this firearm is not on the California approved roster.

28.   I asked BATTENFIELD about a Glock 45 that he sold within ten days of him purchasing it on March 20, 2021, and selling it on March 30, 2021, to C.R. (as of November 19, 2024, this firearm is not on the California approved roster).  BATTENFIELD said that he does not know C.R. BATTENFEILD then stated that he would like to return with his attorney and continue to the interview then. The interview was concluded at this time.

### BATTENFIELD Continues to Deny Firearms Dealing in An August 9, 2024 Interview, Including Specifically Denying That He Had Ever Taken an Order for A Firearm (Interview #2)

29.   On August 9, 2024, I conducted a second interview with BATTENFIELD at the Fresno ATF field office, with BATTENFEILD's attorney, Tyler Harris present. It should be noted this interview took place in the ATF interview room, which is accessed through a public, unlocked door, and one secure door, which was propped open to ensure that all occupants could come and go freely. BATTENFIELD did arrive on his own free will and was not detained or placed in handcuffs. BATTENFIELD was advised again that this was a voluntary interview, and he was not under arrest or detained, and he could stop questioning and leave anytime he wanted.

30.   I asked BATTENFIELD about the day of the search warrant service, July 24, 2024, when he had three firearms with him when he went to the waterpark for his child's birthday. BATTENFIELD said that he had a Shadow Systems frame (not on the California roster) with him, a M&P frame (unknown if on the California roster), and a FN 510 (not on the California roster). BATTENDIELD planned to shop for parts for the M&P frame, and Shadow Systems frame, build the firearms, and look for a local range around Manteca to shoot them at, while on vacation with his family to celebrate his daughter's birthday.

31.   I asked BATTENFIELD about J.L., who I had learned from firearms records was the buyer of multiple firearms from BATTENFIELD. BATTENFIELD stated that he does not know J.L. personally, and explained, "I think I listed something at one time on Calguns, and he messaged me and like I sold him a firearm, and he said Hey, if you ever have anything else to sell let me know." When asked how many firearms he sold to J.L., BATTENFIELD explained that he did not know and that he never kept any records of his firearm sales.

32.    I asked about BATTENFIELD's previous statement in his first interview of only ever selling 30 firearms. BATTENFIELD stated that he was confused, and he thought I meant the number of total transactions.

33.    BATTENFIELD explained that he did not intend to lie in the previous interview when asked about a Model 92 Elite that was sold in a short period after he purchased it. BATTENFIELD stated that he believed the firearm I was asking about was a Fowler Industries, which he did turn over that day, not the Model 92 Elite.

34.    In this interview, BATTENFIELD explained the volume of his gun sales as buyer's remorse. He said that he purchased so many guns because he will purchase a firearm and try it out, whether by dry firing it at home or shooting it at the range. He would then decide he doesn't like the firearm and re-sell it. BATTENFIELD stated that he might purchase one exact make model and caliber and not like it, but he can purchase the same make model and caliber firearm later and it will feel different to him and meet his high standards of firearms and he'll keep it. When asked if it would be weird for him to sell a firearm the same day he purchased it or picked it up, BATTENFIELD said "Depending on…so I've had firearms where I've done dry fire and broke a return spring." BATTENFIELD explained that he will find something he does not like about that firearm and sell it.

35.    I began to ask BATTENFIELD about specific gun transactions he was involved in, including a February/March 2024 purchase and resale of an Alchemy Custom Weaponry Quantico Hi Cap 9mm pistol bearing serial # ACW1358.

36.    According to my review of records, BATTENFIELD purchased an Alchemy Custom Weaponry Quantico Hi Cap 9mm pistol bearing serial # ACW1358 on February 20, 2024, from Morris Levin & Son in Tulare California. This firearm was later sold to R.G., an owner of Smokin' Barrel Firearms, on March 13, 2024.

37.    The Alchemy Custom Weaponry Quantico Hi Cap 9mm is not on the California-approved roster.

38.    When asked about the Alchemy Arms pistol that was purchased with on February 20, 2024, and sold on March 13, 2024, BATTENFIELD stated that he did not shoot the firearm well and decided

to sell it. BATTENFIELD continued to explain that he contacted the company about fixing it due to quality issues, and he decided to sell it instead of shipping it back to the company. BATTENFIELD has sold R.G. four firearms. It should be noted that, although R.G. is the owner of a gun store, he is not exempt from the California roster, and therefore could not otherwise purchase the Alchemy Custom Weaponry Quantico pistol.

39. I asked BATTENFIELD about an additional transaction involving a Staccato handgun that had indicia of firearms of dealing.

40. Based on my review of records, on January 22, 2024, BATTENFIELD received a signed "Chief's Letter" or "Law Letter" from the Chief of the Sanger Police Department. This letter allowed BATTENFIELD to purchase a Staccato XC 9mm pistol bearing serial # XC227499 and skip the typical mandated ten-day waiting period. This firearm was purchased by BATTENFIELD on January 30, 2024, at Central Valley Guns in Selma California and sold to J.W. seven days later, on February 07, 2024. As of November 19, 2024, all Staccato firearms are not on the California approved roster.

41. When asked about the Staccato that BATTENFIELD purchased with a law letter on January 30, 2024, and sold on February 7, 2024, BATTENFIELD said there was quality issues with the firearm so he sold it to J.W. seven days after purchasing it. BATTENFIELD has sold J.W. 11 firearms. When asked if BATTENFIELD has ever sold a firearm the same day he purchased it, BATTENFIELD said yes. BATTENFIELD said, "Buyer's remorse, impulse buy, I can't speculate to each one why."

42. Based on my training and experience, the extremely short time to sale as well as the nature of this Staccato handgun is indicative of unlawful firearms dealing.

43. I then asked BATTENFIELD about a June 2022 firearms transaction where he possessed a firearm for 10 minutes before reselling it.

44. I asked BATTENFIELD, "Would it surprise you if I told you, you bought a gun and sold it the same day at the same gun store within the same hour?"

45. BATTENFIELD stated, "Yes sir."

46. According to my review of firearms records, on May 30, 2022, BATTENFIELD purchased a Glock 17 9mm pistol bearing serial #BGAC924, as a PPT from D.A. According to the Dealer's Record

of Sale, BATTENFIELD picked this firearm up after the 10-day waiting period on June 9, 2022, at 1109 hours.

47.    Ten minutes later, this firearm was sold to B.L. on June 9, 2022, at 1119 hours as a private party transfer from BATTENFIELD, as documented in the Dealer's Record of Sale[8].

48.    Based on my training and experience, this is extremely short time of possession is consistent with unlawful firearms dealing.

49.    I continued to ask BATTENFIELD about transactions consistent with firearms dealing.

50.    I asked about a two Glock pistols that were sold less than four hours after BATTENFIELD took possession of them to the same individual at the same time.

51.    According to records, BATTENFIELD purchased a Glock 45 9mm pistol bearing SN BSNF547 on March 20, 2021. He took possession of that firearm on March 30, 2021, at 1231 hours from Smokin' Barrel Firearms, and then sold the firearm later on March 30, 2021, at 1612 hours to C.R. at Best Jewelry & Loan.

52.    When asked about the Glock 45, BATTENFIELD stated, "I can't tell you… I don't remember".

53.    According to records, at the same time as the Glock 45 BATTNEFIELD purchased a Glock 19X 9mm bearing SN BSLH325. BATTENFIELD took possession of that firearm on March 30, 2021, at 1228 hours from Smokin' Barrel Firearms, three minutes before taking possession of the Glock 45. He sold the Glock 19X less than four hours later on March 30, 2021, at 1612 hours to C.R. at Best Jewelry & Loan in the same transaction as the Glock 45.

54.    When asked about the Glock 19X, BATTENFIELD said he couldn't remember exactly why he sold this firearm within four hours of possessing it, but people will tell him if you ever want to sell a

---

[8] I later interviewed B.L. on September 27, 2024. B.L. stated that on June 9, 2022, he entered Smokin' Barrel Firearms and saw a Glock sitting on top of a glass display case on a foam pad. B.L. inquired about the firearm and realized that the owner (BATTENFIELD) was also at the counter. B.L. said he did not interact with BATTENFIELD much but agreed to the price given of $1,200.00 and paid in full with his credit card. B.L. said the firearm had been modified. $1200 is more than the MSRP of a Glock 17, but I do not know the value of any modifications made to the firearm. As discussed below, I later was able to trace prior transactions related to the Glock 17 and learned that BATTENFIELD made at least $400 in profit on this sale.

firearm let me know. This transaction shows that BATTENFIELD sold C.R. two separate Glocks in one transaction, four hours after BATTENFIELD picked them up form Smokin' Barrel Firearms.

55.   When told the purchasers name, BATTENFIELD stated, "I don't know who that is."

56.   Neither the Glock 45 or Glock 19X pistols are on the California-approved roster of firearms, and based on my training and experience the circumstances of this transaction, including the nature and number of firearms and the time to sale, is consistent with unlawful firearms dealing.

57.   I asked about Sig Sauer pistol sold just over four hours after taking possession of the firearm.

58.   Based on my review of records, BATTENFIELD took possession of a Sig Sauer P320 X Five Legion 9mm handgun bearing SN 58H140147 on October 5, 2019, at 1108 hours from Smokin' Barrel Firearms in Visalia. He then sold that firearm to K.K. just over four hours later in Bakersfield, on October 5, 2019, at Bovi, Inc.

59.   When asked about this firearm, BATTENFIELD said it was not weird to drive to Bakersfield, CA from Visalia to do a gun sale. BATTENFIELD did not have an explanation for why he drove to Bakersfield for a gun sale. He said one time his wife and him went to Disneyland and he had a gun for sale so he conducted the sale while on the trip. BATTENFIELD was unable to say why he sold the gun, nor did he know K.K.

60.   The Sig Sauer P320 X Five was not on the California-approved roster. Based on my training and experience, I believe the circumstances of this sale to be consistent with firearms dealing due to the short time to sale and the nature of the firearm.

61.   I asked BATTENFIELD about electronic communications related to firearms sales.

62.   Based on my training and experience, Calguns.net is website often used to arrange firearms transactions between individuals. I asked what email BATTENFIELD uses for Calguns.net, and BATTENFIELD gave the email address, battenfield.daniel, and a username of ETWPNK. BATTENFIELD said the username means, "E-Town Punks" because he's from Exeter California. BATTENFIELD then stated that he does not receive any messages from Calguns on his email.

63.   As discussed earlier, I obtained BATTENFIELD's phone via a search warrant.

64.    I have personally review BATTENFIELD's phone and have seen emails from Calguns.net. When I told him this, BATTENFIELD did not respond.

65.    I asked about BATTENFIELD's phone in his interviews. BATTENFIELD admitted to deleting messages from his phone prior to turning it over to me. BATTENFIELD stated he deleted private messages between him and his wife that he did not want anyone to see. BATTENFIELD also admitted to deleting other private messages from his phone with other people but did not say who those messages were with or what they were regarding.

66.    I asked about messages related to J.L., who as discussed above is a repeat purchaser of firearms from BATTENFIELD. BATTENFIELD initially said that he did not have J.L.'s phone number saved in his phone, then later said that his phone number was saved under "Gun Dude." BATTENFIELD insisted that he did not have a personal relationship with J.L., and he only knew him by a first name. When asked if BATTENFIELD deleted messages between him and J.L., BATTENFIELD stated, "no sir."

67.    I subsequently reviewed a forensic analysis of both BATTENFIELD's and J.L.'s phones. Based on my review of that analysis, BATTENFIELD had deleted J.L.'s phone number, his name, "gun dude", and all conversations with J.L.

68.    BATTENFIELD also stated that he did not text J.L., and that J.L. would text BATTENFIELD inquiring if BATTENFIELD had any firearms for sale. I know based on my review of BATTENFIELD's and J.L.'s phones that this was untrue. I observed in the forensic review that BATTENFIELD initiated text messages with J.L. multiple times asking if J.L. was interested in purchasing a firearm for him before he listed it for sale online.

69.    I asked BATTENFIELD about the volume and circumstances of his firearm sales.

70.    When told that the records show that BATTENFIELD sold 45 firearms in 2020, BATTENFIELD said that 45 firearms for that year seemed accurate. However, according to BATTENFIELD he does not keep any records, and he normally sells more than one firearm at a time so it is difficult to know how many he has sold. BATTENFIELD said that he was "100 percent sure" that he has never sold a firearm for a profit. BATTENFIELD then added, "If anything I'm taking a loss."

71.    BATTENFIELD explained that he sells many of his firearms with accessories and upgrades for the total of what he had invested into the firearms or for a loss. BATTENFIELD said that he does that so he can purchase a new firearm that he likes. BATTENFIELD said that he does not make a profit on any of his firearms, even though he knows he can sell "off roster" firearms for a significant profit, because he didn't want to be in "this situation" where he's the subject of a criminal investigation. BATTENFIELD stated, "I have not done anything wrong to be in this situation."

72.    BATTENFIELD also stated specifically that he has not taken orders for firearms to sell them to the person placing an order, which would be known as a straw purchase. As discussed below in paragraphs 112-122, on September 18-19, 2022 BATTENFIELD took an order from J.L. for a Sig Sauer Macro pistol. I believe this statement to be a materially false statement to me in violation of 18 U.S.C. § 1001.

### Review of Records Shows Another Alchemy Custom Weaponry Firearm Sold Under Circumstances Consistent with Firearms Dealing

73.    I obtained a copy of a June 20, 2022 "Chief's Letter" or "Law Letter" related to an Alchemy Custom Weaponry Quantico Hi Cap 9mm firearm through a search of firearms transaction records. This letter was from the Sanger Police Department's Chief of Police requesting a waiver of the California 10-day waiting period for a firearm pursuant to California Penal Code Section 27650(a) for a firearm with the serial number ACW447. The Chief's letter stated, "Ofc Battenfield is authorized to carry a firearm in the performance of his police duties and while in off-duty status. I respectfully request that you waive the required waiting period, pursuant to CA Penal Code Section 27650(a). This request pertains to the department approved purchase of the following described firearm."

74.    Review of the DROS records as well as records I later obtained from Smokin' Barrel Firearms showed that BATTENFIELD purchased that an Alchemy Custom Weaponry Quantico Hi Cap 9mm with Serial Number ACW447 from Smokin' Barrel Firearms on June 23, 2022. The firearm with serial number ACW447 was then placed on consignment at Smokin' Barrel on June 26, 2022, and later sold

to P.M. on July 20, 2022[9]. According to records, BATTENFIELD sold the firearm to P.M. for $4,400.00.

75.   This firearm was not on California-approved roster. Based on my training and experience, the circumstances of this sale, including the nature of the firearm, the sale price, and the short time to sale, is consistent with firearms dealing.

### Interviews of M.G. and R.G., owners of Smokin' Barrel Firearms, Reveals Additional Information Consistent with Firearms Dealing

76.   On September 23, 2024, Special Agent Sahil Sharma and I conducted a non-custodial interview of M.G. and R.G., the owners of Smokin' Barrel Firearms, in Visalia California. The interview took place at Smokin' Barrel Firearms, located at 3222 N. Demaree Street, Suite D, Visalia, CA.

77.   R.G. explained that BATTENFIELD has placed his firearms on consignment with Smokin' Barrel Firearms, and if the firearm does not sell quickly, he will take the firearm back and do custom work to it, such as stippling it or having the slide "cut" or milled to accept an optic to make it easier to sell the firearm. R.G. explained that they do not charge a DROS fee to accept the firearm on consignment, but they do charge the $37.19 fee to BATTENFIELD if he wants to remove it from consignment. R.G. also explained that the shop charges 20% on consignment firearms, and the normal fee for Private Party Transfers (PPT) is $55.00, which gives the store a profit of $17.81.

78.   I asked about several firearms BATTENFIELD had sold to R.G. and M.G. personally, rather than to the gun store.

79.   I asked about an Alchemy Arms 1911 bearing serial number SBF8134 that R.G. purchased from BATTENFIELD on March 13, 2024, 22 days after BATTENFIELD purchased the firearm. R.G. stated that he purchased that firearm from BATTENFIELD and sold it back to BATTENFIELD upon BATTENFIELD's request approximately three weeks later. R.G. stated BATTENFIELD said he didn't want the Alchemy Arms anymore, and later said he regretted selling it, so R.G. sold it back. As of November 19, 2024, this firearm is not on the California approved roster.

---

[9] This time to sale is less than 30 days. Under Cal. Bus. & Pro. Code § 21636, firearms dealers are supposed to retain consignment firearms for at least 30 days before reselling. This provision is intended to give law enforcement time to discover stolen firearms before they are resold at a pawn shop.

80. When asked about a Smith and Wesson M&P 9, 2.0, bearing serial number NJL0217, that R.G. purchased from BATTENFIELD on October 22, 2021, which was 30 days after BATTENFIELD purchased the firearm on September 22, 2021, R.G. said that he did not remember purchasing that firearm and he did not know how much he purchased it from BATTENFIELD for. At the time BATTENFIELD purchased and resold this firearm, this firearm was not on the California roster.

81. When I asked about a Sig P938, bearing serial number 52E090876 that M.G. purchased from BATTENFIELD on October 21, 2021, 100 days after BATTENFIELD acquired the firearm on July 12, 2021, from Smokin' Barrel Firearms, M.G. stated he had no recollection of how much he paid for the firearm. As of November 19, 2024, this firearm is not on the California approved roster. M.G. stated he would not have any text messages regarding the transaction as BATTENFIELD comes into the gun store and say that he wants to sell a firearm. Therefore, no negotiations or conversations are on text messages. In this case, due to the California "roster" laws, M.G. cannot purchase this particular firearm new, so he purchased it from BATTENFIELD.

82. Based on my training and experience, the nature and timing of these transactions was consistent with firearms dealing by BATTENFIELD.

83. I asked R.G. and M.G. about the firearm BATTENFIELD sold within ten minutes of picking it up.

84. As discussed above, this was a Glock 17 bearing serial number BGAC924. BATTENFIELD purchased this at Smokin' Barrel Firearms as a PPT from D.A. on May 30, 2022, and picked up on June 9, 2022, at 1109 hours, and was re-sold within minutes at 1119 to B.L.

85. M.G. explained that it was possible that B.L. could have been in the store asking about a Glock 17 for sale at the same time of BATTENFIELD picking the firearm up, and the two decided to negotiate a sale of the firearm then. It should be noted that M.G. was the employee that finished the paperwork with BATTENFIELD regarding completing his purchase of the firearm, and he was the employee that started the paperwork for the PPT sale from BATTENFIELD, therefore he would have known that BATTENFIELD had just purchased that firearm.

86.   M.G. said, "I know this looks really bad," and continued to explain that he has told BATTENFIELD in the past that their store could not complete certain PPTs due to BATTENFIELD's quick turn-over rate. M.G. said that he told BATTENFIELD, "You got to watch how fast you're flipping this thing," and "I'm gonna make the exception this one time."

87.   On October 3, 2024, SA Sharma and I returned at Smokin' Barrel Firearms and went into the back room with R.G. and M.G to review and retrieve shop records.

88.   R.G. advised me that he was able to locate purchase and sales prices on some of BATTENFIELD's transitions but not all of them. R.G. explained that their firearms records book is not required to include sales prices, but they did have that information on some, not all. R.G. said that some of the transaction prices showed that BATTENFIELD was charging more when he re-sold the firearms, but he did not have any record of any modifications or accessories that may have been added to the firearms prior to being re-sold by BATTENFIELD.

89.   When I asked if M.G. looked through his text messages with BATTENFIELD to locate text messages regarding gun sales and prices, M.G. said no. M.G. explained, "I'm between a rock and a hard place, I'm not gonna lie. I don't want to do something to get him (BATTENFIELD) in trouble because he is a good friend of mine, but I don't want to get in trouble for not helping you."

90.   Based on my training and experience, the statements from R.G. and M.G. about their business dealings with BATTENFIELD are consistent with BATTENFIELD acting as an unlawful dealer in firearms.

### Text messages between Smokin' Barrel Firearms owner M.G. and BATTENFIELD show BATTENFIELD selling firearms for profit

91.   On October 10, 2024, I obtained screenshots of text messages between M.G. and BATTENFIELD. The screenshots were taken by M.G. from M.G.'s personal phone and voluntarily given to me. A review of those text messages was later conducted. It should be noted that the contact in M.G.'s phone was saved under "Daniel Battenfield" and the phone number was confirmed to be the same as BATTENFIELD's phone number, (559) 909-5560. The following is a summary of some of the text conversations:

May 7, 2021:

BATTENFIELD: "Know anyone looking for a Glock 45"

BATTENFIELD: "Oh and nighwawk ordered? Haha"

M.G.: "I don't at the moment. And yes it is"

BATTENFIELD: (Thumbs up emoji)

M.G.: "What are you asking for it?"

BATTENFIELD: "If it's you $600. Anyon else 1000-1100"

92.   I believe this conversation shows that BATTENFIELD has a $400-$500 profit built into this firearm if he is willing to sell it to a friend for $600, but would otherwise sell it for $1,000 to $1,100.

October 27, 2022:

BATTENFIELD: "Going to sell my 320 legion if you know anyone"

M.G.: "How much" (laughing emoji)

BATTENFIELD: "For you or someone else"

M.G.: "Both haha"

BATENFIELD: "For you 1100with mags and Holosun 407c, 2000 for someone else"

93.   I believe this conversation shows that BATTENFIELD has a $900 profit built into this firearm as he is willing to sell it to a friend for $1,100, but would otherwise sell it for $2,000.

**Interview of D.A. shows gun trade where BATTENFIELD made over $400 in profit**

94.   On October 1, 2024, I conducted a telephonic interview of D.A., who records reveal was the seller to BATTENFIELD of the Glock 17 that BATTENFIELD resold ten minutes later for $1200. At the same time D.A. sold BATTENFIELD the Glock 17, records show D.A. also purchased a CZ pistol from BATTENFIELD. By tracing the transactions, I was able to learn that BATTENFIELD made a profit on these related sales.

95.   In his interview, D.A. said that had traded the customized Glock 17 bearing SN BGAC924 to BATTENFIELD in exchange for a CZ P-10C 9mm pistol. The CZ P-10C 9mm firearm was not on the California roster.

96.    On October 3, 2024, D.A. sent me a photograph of a California DROS record, dated May 30, 2022. This DROS record indicated that D.A. received a CZ P-10C, 9mm pistol, bearing serial number F360980. D.A. stated that he believed the CZ was not altered but had a Surefire X300 weapon light ($292.99 on Amazon) and a Noveske X ANR holster ($58.99-$87.98 on ANR Design Kydex Holsters website).

97.    The CZ P-10C is not on the California roster. Based on my training and experience, non-roster guns are worth an increased amount in California to non-peace offices who cannot purchase them new. Invoices obtained from Smokin' Barrel Firearms shows that BATTENFIELD purchased this CZ pistol from Smokin' Barrel Firearms on April 9, 2022. However, the invoice does not include a purchase price.

98.    I researched the sale price of a CZ P-10C on the CZ USA website and learned it is $399.00. BATTENFIELD traded his CZ with a weapon light (MSRP $292.99) and holster (MSRP $87.98), worth a total MSRP of $779.97, for the Glock 17 he later sold to B.L. for $1,200.00. In doing so, I believe BATTENFIELD made a profit of approximately $420.03.

**Interview of B.L. regarding a Smith & Wesson M&P 2.0 9mm pistol bearing SN: NLN0191 shows BATTENFIELD sold firearm for profit**

99.    On October 22, 2024, I conducted a telephonic interview of B.L., who is a purchaser of a firearm from Daniel BATTENFIELD.

100.    B.L. stated he purchased the M&P from Smokin' Barrel Firearms on consignment on April 19, 2022, and he did not know that BATTENFIELD was the seller of the firearm. B.L. stated he purchased the M&P for an above retail price of $900.00 because it is an "off roster" firearm and he cannot purchase it new at retail price due to California law. B.L. stated the firearm appeared to be in stock or Original Equipment Manufacturer (OEM) condition with no modifications or accessories added to it.

101.    According to records obtained from Smokin' Barrel Firearms, this Smith & Wesson M&P pistol was purchased new by BATTENFIELD for $580.00 on January 10, 2022, placed on consignment at Smokin' Barrel Firearms on April 27, 2022, and sold to B.L. on May 19, 2022 for $900.00.

**Interview of F.C. regarding purchases of Sig Sauer P320 Carry bearing SN 58C013180,**

**and a Glock 34 Gen 5 bearing SN BRHD601 shows BATTENFIELD sold firearms for profit**

102.  On October 22, 2024, I conducted a telephonic interview of F.C., who is a purchaser of two firearms from BATTENFIELD. F.C. stated he purchased the Glock 34 Gen5 from Smokin' Barrel Firearms on consignment on July 8, 2021 for $1,200.00. F.C. stated the Glock had a red dot sight on it at the time of purchase and was otherwise OEM. F.C. was not sure what type of red dot was on the Glock but thought it was worth approximately three hundred dollars. F.C. stated he paid an inflated price for the firearm due to it being an "off roster" firearm and he could not purchase it new at retail price due to California law.

103.  According to records obtained from Smokin' Barrel Firearms, this Glock was purchased new by BATTENFIELD for $554.00 on May 21, 2021, placed on consignment at Smokin' Barrel Firearms on June 14, 2021, and sold to F.C. on July 8, 2021 for $1,200.00. According to F.C., the only modification to the firearm was a red dot optic. F.C. sent me photographs of the firearms in question. The Glock had a Holosun optic (Model # HE508T-RD-X2) which retails for $369.99 on the Optics Planet website. According to the Glock website, the Gen5 Glock 34 comes from the factory milled and ready to accept a red dot sight. The photographs also show that the pistol grip was modified with a relief cut. This is a modification BATTENFIELD stated he did to some of his firearms.

104.  F.C. stated he purchased the Sig Sauer P320 Carry from Smokin' Barrel Firearms on consignment on November 15, 2021 for $850.00. F.C. stated the Sig Sauer was OEM with no modifications or accessories. F.C. stated he paid an inflated price for the firearm due it being an "off roster" firearm and he could not purchase it new at retail price due to California law. According to records obtained from Smokin' Barrel Firearms, this Sig Sauer was purchased new by BATTENFIELD for $499.00 on April 24, 2021, placed on consignment at Smokin' Barrel Firearms on October 21, 2021, and sold to F.C. on November 15, 2021 for $850.00.

**Interview of J.H. regarding a Sig Sauer P226 Legion bearing SN 47G014878
shows firearms sales for profit**

105.  On October 22, 2024, I conducted a telephonic interview of J.H., who is a purchaser of a firearm from BATTENFIELD. J.H. stated he purchased the Sig Sauer P226 Legion from Smokin'

Barrel Firearms on consignment on April 12, 2023 for $1,700.00. J.H. stated the Sig Sauer had a Holosun 507C optic with a green 32 moa reticle. Besides the optic, the firearm was OEM, did not have any other modifications or accessories, and it came with no magazines. The Holosun optic (Model #HS507C-GR-X2) retails for $329.99 on the Optics Planet website. According to the Sig Sauer website, the P226 Legion comes from the factory milled and ready to accept an optic. J.H. stated he paid an inflated price on the firearm due to it being an "off roster" firearm and even as a retired Law Enforcement Officer (LEO) from California Department of Corrections (CDCR), he could not purchase it new at retail price due to California law.

106. According to records obtained from Smokin' Barrel Firearms, this Sig Sauer P226 Legion pistol was purchased new by BATTENFIELD for $1133.00 on October 10, 2022, placed on consignment at Smokin' Barrel Firearms on March 20, 2023, and sold to J.H. on April 12, 2023 for $1,700.00. As of November 19, 2024, this firearm is not on the California roster.

**Interview of R.F. regarding a Glock 19 bearing SN BNYR254 shows firearms dealing**

107. On October 22, 2024, I conducted a telephonic interview of R.F., who is a purchaser of a firearm from BATTENFIELD.

108. R.F. stated he purchased a Glock 19 bearing SN BNYR254 from Smokin' Barrel Firearms on consignment on April 1, 2022 for $1,250.00. Fraser stated the Glock was "tricked out" or heavily modified with an optic, aftermarket trigger and an aftermarket slide. R.F. has since sold the firearm to a friend and did not have a photograph of the firearm and did not remember the manufacture or model of the aftermarket parts that were on the firearm at the time of purchase.

109. According to records obtained from Smokin' Barrel Firearms, this Glock 19 was purchased used by BATTENFIELD via private party transfer (PPT) from E.M. on October 25, 2021, for $450.00, placed on consignment at Smokin' Barrel Firearms on March 11, 2022, and sold to R.F. on April 01, 2022, for $1,250.00.

110. I do not know what modifications had been performed to the Glock prior to BATTENFIELD's purchase. However, the difference in purchase price is consistent with BATTENFIELD manufacturing

dealing in firearms, either because he bought and resold a firearm at a profit or because he used his skills as an armorer to modify a firearm in order to sell for a higher amount.

**Interview of A.B. regarding a Glock 45 bearing SN BVAF190 shows firearms dealing for profit**

111. On October 22, 2024, I conducted a telephonic interview of A.B., who is a purchaser of a firearm from BATTENFIELD. A.B. stated he purchased the Glock 45 from Smokin' Barrel Firearms on consignment on July 30, 2022, for $800.00. A.B. stated the Glock was OEM with no modifications or accessories. A.B. stated he paid an inflated price for the firearm due to it being an "off roster" firearm and he could not purchase it new at retail price due to California law. According to records obtained from Smokin' Barrel Firearms, this Glock was purchased new by BATTENFIELD for $425.00 on May 30, 2022, placed on consignment at Smokin' Barrel Firearms on June 25, 2022, and sold to A.B. on July 30, 2022, for $800.00 As of November 19, 2024, this firearm was not on the California roster.

**Text messages between J.L. and BATTENFIELD show BATTENFIELD taking orders for firearms and selling firearms for profit, including a Sig Sauer pistol and a Walther pistol. During the transaction, BATTENFIELD lied on a federal firearms form**

112. On September 11, 2024, I obtained the forensic analysis of J.L.'s cellular phone, which had been seized in accordance with a federal search warrant which was served on July 24, 2024. A review of that forensic analysis revealed at least 5,420 text messages between J.L. and BATTENFIELD. BATTENFIELD was communicating (texting) J.L. from BATTENFIELD's confirmed phone number, (559) 909-5560. I reviewed those messages and discovered multiple conversations consistent with dealing unlawfully in firearms.

113. In my review, I discovered the following conversation in connection with the straw purchase of a Sig Sauer pistol and the sale of Walther pistol:

> *September 18, 2022:*
>
> J.L.: "How much for a macro" (Sig Sauer pistol)
>
> *September 19, 2022*
>
> BATTENFIELD: "The sig 365 macro?"

J.L.: "Yeah"

BATTENFIELD: "I would have to order one"

"I would do it for 1250"

"By the time taxes, shipping fees and dros it's close to $1000"

J.L.: "Yeah I will take it"

BATTENFIELD: "Ok. I'll order one but will need the money to pay for it. I can get one here by the end of the week. And have to hold onto it for a bit before we transfer."

"You can take it all except the serialized trigger group. If that works for you let me know"

J.L.: "That's fine I can send you the cash on Wednesday"

BATTENFIELD: "Sounds good brother. I'll get it ordered then."

J.L.: Liked "Sounds good brother. I'll get it ordered then."

*September 22, 2022:*

J.L.: "I will send the $ tomorrow"

*September 23, 2022:*

J.L.: "Let me know how to send the cash"

BATTENFIELD: "Etwnpnks@yahoo.com"

J.L.: "PayPal"

BATTENFIELD: "Yes sir"

J.L.: "Sent the money"

*September 25, 2022:*

J.L.: "We still have the deal on the canik (Canik pistol)"

BATTENFIELD: "I think we are going to end up keeping. My wife liked it a lot. I'll probably end up selling my Walther q5 steel frame"

J.L.: "How much"

BATTENFIELD: "1800 never fired."

J.L.: "Order another canik"

BATTENFIELD: "Can't"

J.L.: "Ok"

"Send me some pictures of it"

J.L.: "Q5" (Walther pistol)

*September 26, 2022:*

BATTENFIELD: "I will tomorrow morning. It's in my work locker. Brand new. Picked it up a feweeks ago"

BATTENFIELD: "https://waltherarms.com/q5-match-steel-frame-standard/" (link to Walther's website page for the Q5 pistol)

*September 28, 2022:*

BATTENFIELD: "Did you want the Walther too"

J.L.: "Yes"

BATTENFIELD: "Ok cool"

J.L.: "When did you want to transfer them"

BATTENFIELD: "End of Oct"

J.L.: "Ok"

114. Notably, in this conversation BATTENFIELD discussed ordering a Sig Sauer Macro for J.L. During his interview with agents on August 9, 2024, BATTENFIELD denied ever ordering a firearm for another person as described above in paragraph 72. This was a material falsehood in violation of 18 U.S.C. § 1001.

115. The conversation continued with BATTENFIELD claiming that he was having issues with obtaining the Sig Sauer Macro, so he attempted to refund J.L.'s money on Pay Pal. However, records show that BATTENFIELD actually purchased the Sig Sauer P365X Macro, 9mm pistol, bearing serial number 66F311389 on September 19, 2022, from Smokin' Barrel Firearms for $799.00 (this firearm was later sold to J.L. on October 26, 2022). At that BATTENFIELD purchased and re-sold this firearm, this firearm was not on the California roster. BATTENFIELD also purchased a Walther PPQ Q5, 9mm pistol, bearing serial number FDI6791 on the same transaction for $1,429.00 from Smokin' Barrel

Firearms (this firearm was later sold to J.L. on October 26, 2022). As of November 19, 2024, this firearm is not on the California roster.

116.  The conversation continued with the two discussing issues they are having with Pay Pal.

October 10, 2022:

BATTENFIELD: "Did you still want those guns" (Sig Sauer pistol and Walther pistol)

J.L.: "Yes"

BATTENFIELD: "Did that money go thru. If you want to rend it again that works for me"

J.L.: "I sent 800 and will call PayPal because I don't see it in my account yet"

BATTENFIELD: "Would you rather have a limited sig 226 single action (trigger like 2011) legion over the q5"

BATTENFIELD: "Both amazing guns"

J.L.: "The Q5 (Walther pistol) or Canik"

BATTENFIELD: "Q5 is all yours"

October 11, 2022:

J.L.: "Sent the $450"

October 16, 2022:

BATTENFIELD: "Does wed the 26th work"

J.L.: "Yeah"

October 23, 2022:

BATTENFIELD: "Still on for this week?"

J.L.: "Yes"

October 25, 2022:

BATTENFIELD: "What time tomorrow. I can meet in Fresno"

BATTENFIELD: "?"

J.L.: "What time is good for you"

BATTENFIELD: "Earlier the better"

J.L.: "10? Can you meet out here"

BATTENFIELD: "Yes sir. Uncle Sam's?" (Gun store in Fresno)

J.L.: "Yes he changed the name he's oj cedar and Herndon"

J.L.: "On"

BATTENFIELD: "Perfect. What's the new name"

J.L.: "Jim's trading post"

BATTENFIELD: "Awesome. See you there"

J.L.: Liked "Awesome. See you there"

J.L.: "How much do I owe you"

BATTENFIELD: "1800" (For the Walther Q5 pistol)

J.L.: "Ok"

*October 26, 2022:*

BATTENFIELD: "Hey bro is there anyway we can meet at 1"

J.L.: "That's fine"

BATTENFIELD: "Sorry man I appreciate it"

BATTENFIELD: "On my way. Be there at 1"

J.L.: "I'm here"

BATTENFIELD: "Here"

117. This conversation shows J.L. making an order for a firearm (Sig Sauer P365 Macro) that at the time BATTENFIELD did not possess. The order or request for the "Macro" was placed by J.L. to BATTENFIELD on September 18, 2022, and confirmed by BATTENFIELD on September 19, 2022. The acceptance of the order was an agreement by BATTENFIELD to conduct a straw purchase of the "Macro" for J.L., by purchasing the firearm for another person.

118. As discussed above, I obtained several ATF Form 4473[10] documents from Smokin' Barrel Firearms. In reviewing them, I found the 4473 that relates to this transaction. I know this because this 4473 documents the transfer of two firearms, a Sig Sauer P365X Macro and a Walther PPQ Q5, with a

---

[10] An ATF Form 4473 is a firearms transaction record that must be completed by the purchaser of a firearm at the time of purchase.

purchase date of September 19, 2022. This is the same date and the same model of firearms discussed by BATTENFIELD above.

119. The 4473 was completed by BATTENFIELD on September 19, 2022, at Smokin' Barrel Firearms. This 4473 confirmed that BATTENFIELD purchased two firearms in one transaction, the aforementioned Sig Sauer and Walther. On page 1 of the form 4473, line 21a, the form asks:

> "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b.:"

120. The form has check boxes for "Yes" or "No" at the end of this question. BATTENFIELD placed an "X" on the "Yes" column. Additionally, all other check boxes (eleven of them) were checked no. This is the only column with a "Yes" check in the box.

121. By checking this box "Yes", BATTENFIELD lied on a federal form in connection with a firearms purchase in violation of 18 U.S.C. § 922(a)(6). As discussed above, he was purchasing this Sig Sauer on J.L.'s behalf, because as an "off-roster" firearm J.L. could not purchase it himself.

122. BATTENFIELD then notified J.L. that he will have a total of $1,000 invested into the firearm (Sig Sauer) including taxes and fees and agreed to sell it to J.L. for a $250 profit at $1,250. BATTENFIELD then tells J.L., "Ok. I'll order one but will need the money to pay for it. I can get one here by the end of the week. And have to hold onto it for a bit before we transfer." This shows that BATTENFIELD is confirming the order and letting his customer (J.L.) know that he is requiring payment for the firearm before ordering it. Additionally, by telling J.L. that he will need to "hold onto it for a bit" shows that BATTENFIELD is attempting to avoid detection by law enforcement by keeping it registered in his name for longer. Based on my background, training, and experience, it is common knowledge for gun enthusiasts and law enforcement to know that quick firearm sales can have the appearance of a straw purchase or other illegal activity.

123.  On September 25, 2022, after J.L. asked BATTENFIELD about a future deal on a Canik pistol, BATTENFIELD responded that he was not going to sell the Canik and offered a different firearm (Walther PPQ Q5 steel frame). BATTENFIELD told J.L. that the firearm is new and never fired, and he later sent J.L. a link to the website, indicating that the firearm is in stock or OEM form with no modifications. BATTENFIELD told J.L. that he will sell him the Walther for $1,800, and J.L. agreed to the price.

124.  This conversation shows that BATTENFIELD sold the Walther to J.L. for a profit of $371 minus the sales tax. The California DROS fee of $37.19 was included already in the price of the Sig Sauer, as it was on the same transaction. California allows multiple firearms on one DROS fee if they are purchased the same day at the same gun store on the same transaction. BATTENFIELD's purchase of these firearms, and the sale to J.L. was confirmed utilizing California DROS records.

**Text messages between J.L. and BATTENFIELD show the sale of a FN pistol for profit**

125.  On December 12, 2019, BATTENFIELD texted J.L. to notify him that he was selling a FN 509 pistol. BATTENFIELD stated, "I have a fn 509 tactical with apex threaded barrel and Parker mountain machine comp Apex trigger". BATTENFIELD gave J.L. a price of $800, which J.L. agreed to. BATTENFIELD informed J.L. that he would remove the threaded barrel and compensator for the transfer. Due to my background, training, and experience, I know that the threaded barrel on that firearm would classify it as an "assault weapon" according to California law. This means BATTENFIELD converted this firearm to an assault weapon, took the illegal part off of the firearm to allow a lawful transfer, then gave J.L. the illegal threaded barrel. This is not a federal violation, but a clear indication that BATTENFIELD was familiar with applicable firearm laws and regulations and was intentionally violating them.

126.  According to the text messages, BATTENFIELD sold the FN pistol to J.L. on December 13, 2019. DROS records corroborate the Private Party Transfer (PPT) from BATENFIELD to J.L. of a FN 509 9MM pistol bearing Serial # GKS0008507. According to the records obtained from Smokin' Barrel Firearms, this firearm was purchased for $575.00, with tax and the DROS fee the total was $648.88,

and ultimately sold to J.L. for $800 after it was modified. As of November 19, 2024, this firearm is not on the California approved roster.

**Text messages between J.L. and BATTENFIELD show the sale of a Sig Sauer pistol for profit**

127.  On February 29, 2020, J.L. texted BATTENFIELD asking him, "Is there anything for sale". BATTENFIELD offered J.L. a Sig P320 X-Carry for $850. J.L. agreed to the price and the two agreed to meet at Central Valley Guns in Selma California to conduct the PPT on March 7, 2020. DROS records corroborate the PPT from BATTENFIELD to J.L. According to the records obtained from Smokin' Barrel Firearms, this Sig Sauer P320 9mm pistol bearing serial # 58H179928 was purchased for $535.00 on February 22, 2020, plus tax and the DROS fee, and sold to J.L. for $850.00 on March 7, 2020. BATTENFIELD advertising this firearm to J.L. as "Brand new never fired" when J.L. requested photographs of the firearm, leads me to believe that this firearm was a stock and unaltered OEM firearm. As of November 19, 2024, this firearm is not on the California approved roster.

**Text messages between J.L. and BATTENFIELD show the sale of a CZ pistol for profit**

128.  On April 1, 2020, BATTENFIELD texted J.L., "Hey man I may sell a shadow 2 if you know anyone interested". BATTENFIELD offered a price of $1,600, which J.L. agreed upon. BATTENFIELD and J.L. met up on April 3, 2020, at Central Valley Guns in Selma California to conduct the PPT. DROS records corroborate the PPT from BATTENFIELD to J.L. of a CZ USA Shadow-2 9mm pistol bearing serial # D111286.

129.  Records show BATTENFIELD originally purchased this firearm from Smokin' Barrel Firearms. However, the receipt was not located in the records provided by Smokin' Barrel Firearms. The CZ USA Shadow-2 MSRP is $1,099.00, and $1,299.00 for the optics ready variant. According to the text messages, J.L. paid BATTENFEILD utilizing Venmo to BATTENFIELD's account "@daniel-battenfield"[11]. Due to my training and experience, I know that when BATTENFIELD refers to a "shadow 2" he is referring to a CZ USA Shadow-2 pistol (as of November 19, 2024, this firearm is not on the California approved roster).

---

[11] I know this to be BATTENFIELD's account because messages show he provided it to J.L. and because the account name is BATTENFIELD's name.

**Text messages between J.L. and BATTENFIELD show the dealing of a two Glock pistols**

130.  On October 29, 2020, BATTENFIELD texted J.L. advertising he was selling a Glock 17 Gen-5 pistol for $1,200. J.L. inquired about a Glock 45 MOS that BATTENFIELD had. As of November 19, 2024, these firearms are not on the California approved roster.

131.  When BATTENFIELD confirmed he still had the Glock 45, J.L. stated "I will take it". BATTENFIELD later told J.L., "I don't know if you are interested in the 34 (Glock 34) also but I'll give you a hell of a deal". BATTENFIELD offered to sell J.L. both firearms for $2,000 and described the Glock 34 as having only 50 rounds through it, and explained it also had custom work performed on it, with a Leupold optic, and a Wilson Combat aftermarket barrel. They agreed to meet so J.L. could purchase the Glock 45 and look at the Glock 34. J.L. did purchase both firearms from BATTENFIELD. The DROS records confirmed the meet up and purchase of both firearms on November 24, 2020, at Best Jewelry and Loan pawn shop in Visalia, California.

132.  According to the records obtained by Smokin' Barrel Firearms and DROS records, a Glock 45 9mm pistol bearing serial # BMCP113 was purchased at Smokin' Barrel Firearms on consignment by BATTENFIELD on November 9, 2020, for $850.00. The Glock 34 9mm pistol bearing serial # BRCY049 was purchased at Smokin' Barrel Firearms as a Glock 17, on October 20, 2020, for $484.00 plus tax. The Glock 17 and the Glock 34 have the same frame. After purchasing the Glock 17, BATTENFIELD would have changed the slide to a Glock 34 "long slide" and sold it as a Glock 34. Both firearms were sold for $2,000.00 total.

133.  Based on my training and experience, the circumstances of this sale, including the conversation and the nature of the firearms, is consistent with dealing in firearms.

**Text messages show the sale of a Sig Sauer pistol for profit**

134.  On April 23, 2021, BATTENFIELD texted J.L., offering a Sig Sauer AXG Scorpion for sale for $2,100, stating, "Everyone on calguns are 2700-3000". J.L. offered BATTENFIELD $1,900 for the pistol and BATTENFIELD agreed by saying, "If you are serious I'll do 1900 and not even list it". BATTENFIELD told J.L. that the firearm was "Brand new never fired never had a round even chambered." BATTENFIELD gave J.L. his Venmo account (@daniel-battenfield) to send a deposit.

J.L. notified BATTENFIELD that he sent him $200.00, and BATTENFIELD confirmed he received it. The two agreed to meet at Tulare Pawn and Jewelry in Tulare California on May 6, 2021, to conduct the PPT. California DROS records confirmed the meet up and transfer of the firearm.

135. According to records obtained from Smokin' Barrel Firearms and DROS records, a Sig Sauer P320 AXG Scorpion bearing serial # 58H231623 was purchased by BATTENFIELD on April 22, 2021, for $949.99 plus sales and the DOJ fee of $37.19. BATTENFIELD's statement of the firearm being, "Brand new never fired never had a round even chambered" shows that the firearm is a stock and unaltered OEM firearm with no modifications.

136. Furthermore, I believe BATTENFIELD's willingness to drop the price from $2,100 to $1,900, shows that he had a lot of profit built into this firearm, and he was still making a profit after lowering the price. As of November 19, 2024, this firearm is not on the California approved roster. According to text messages and records, this firearm was purchased by BATTENFIELD on April 22, 2021, for $949.99 plus sales and tax and the DOJ fee of $37.79, and re-sold to J.L. on May 06, 2021, for $1,900.00.

**Text messages show firearms dealing of a Smith & Wesson pistol**

137. On May 4, 2021, J.L. texted BATTENFIELD asking if he had anything new for sale, stating, "have you picked up anything else." BATTENFIELD told him he had an "Optic ready ported (factory) m&p 2.0 performance center" for sale. BATTENFIELD stated he was, "Asking 1000 but open to offers". J.L. offered BATTENFIELD $850 and BATTENFIELD agreed. BATTENFIELD later confirmed that the firearm came with everything from the factory, indicating the firearm was a stock and unaltered OEM firearm with no modifications. At the time BATTENFIELD purchased and re-sold this firearm it was not on the California roster. The two agreed to meet at Tulare Pawn and Jewelry in Tulare California on May 6, 2021, to conduct the PPT. California DROS records confirmed the meet up and transfer of the firearm.

138. A receipt obtained from Smokin' Barrel Firearms confirms the purchase of the S&W M&P9 2.0 C.O.R.E. bearing serial # NKB9141 by BATTENFIELD on April 7, 2021. However, the receipt only includes the price of other items and the DROS fee of $37.19. According to the Smith and Wesson

website, the M&P9 2.0 C.O.R.E. MSRP price is $781.00. BATTENFIELD re sold this firearm to J.L. on May 6, 2021, for $850.00.

### Text messages show the sale of a Glock 19 for profit

139.  On June 14, 2021, BATTENFIELD texted J.L. offering a Glock 19 Gen-5 for sale for $1,000. BATTENFIELD told J.L. the firearm had never been fired, and he would include an aftermarket Overwatch precision trigger. J.L. agreed on the price of the firearm and they agreed on $25.00 a piece for five extra magazines. The two agreed to meet at Smokin' Barrel Firearms to conduct the PPT on June 15, 2021. DROS records and receipts provided by Smokin' Barrel Firearms confirmed the meet up and transfer of the firearm, a Glock 19 Gen-5, 9mm pistol bearing serial # BTDB123.

140.  The original purchase receipt of the firearm when BATTENFIELD purchased the firearm from Smokin' Barrel Firearms was not located in the other provided receipts. The Glock website does not have an MSRP. However, Guns.com has the Glock 19 Gen-5 on sale for $539.11, with a listed retail price of $647.00. Additionally, on the Overwatch Precision website, the Glock 19 Gen-5 trigger sells for $135.00 (as of November 19, 2024, this firearm is not on the California approved roster).

141.  Based on my training and experience, I believe this information demonstrates that BATTENFIELD made a profit of between $250 to $350 on this firearm.

### Text messages show the sale of a Smith & Wesson pistol and CZ pistol for a profit

142.  I reviewed text messages that showed that on July 7, 2021, BATTENFIELD and J.L. negotiated the price of a two-gun sale deal, consisting of a Smith & Wesson M&P 2.0 bearing serial # NEU9417, and a CZ USA Shadow-2 bearing serial # F023693 for $2,400. The Smith and Wesson had an Apex trigger installed. Besides the aftermarket trigger, both seem to be otherwise stock and unaltered OEM firearms. The two agreed to meet at Tulare Pawn and Jewelry in Tulare California on July 8, 2021, to conduct the PPT. California DROS records confirmed the meet up and transfer of the firearms.

143.  According to the records obtained by Smokin' Barrel Firearms and DROS records, the Smith and Wesson M&P 2.0 was purchased on July 21, 2020, for $513.70 plus sales tax. The CZ Shadow-2 was a firearm that BATTENFIELD purchased from an out of state seller and had shipped to Smokin' Barrel Firearms. According to the CZ USA website, the Shadow-2 MSRP is $1,099.00, plus the $50.00

dealer fee, plus the $37.19 DROS fee. These two firearms were later sold to J.L. on July 8, 2021, for $2,400.00. As of November 19, 2024, the CZ firearm is not on the California approved roster.

144. Based on my training and experience, I believe the above shows that BATTENFIELD made a profit on this transaction.

### Text messages show the sale of two Sig Sauer pistols for a profit

145. On July 19, 2021, BATTENFIELD texted J.L. notifying him that he was selling a Sig Sauer P320 X-Carry, tan in color, for $900.00, and a Sig Sauer P320 Legion (X-Five), for $1,750.00. BATTENFIELD offered to sell J.L. both for $2,600.00. J.L. offered to pay $2,200.00 for both, and BATTENFIELD agreed on the price. J.L. paid BATTENFIELD a $100.00 deposit on BATTENFIELD's PayPal to his provided account "Etwnpnks@yahoo.com". According to the California DROS records, the two met at Best Jewelry and Loan in Visalia California on July 27, 2021, to conduct the PPT, which involved a Sig Sauer P320 X-Five Legion 9mm pistol bearing serial # 58K098552 and a Sig Sauer P320 X-Carry FDE 9mm pistol bearing serial # 58J199032.

146. According to the records obtained from Smokin' Barrel Firearms and DROS records, the Sig Sauer P320 X-Five Legion was purchased new by BATTENFIELD on July 13, 2021, for $899.99 At the time BATTENFIELD purchased and re-sold this firearm it was not on the California roster. The Sig Sauer P320 X-Carry was purchased new on the same purchase as the aforementioned Legion, on July 13, 2021, for $535.00, plus sales tax and the DROS fee of $37.19. As of November 19, 2024, this firearm is not on the California roster.

147. These two firearms were later re-sold to J.L. on July 27, 2021, for $2,200.00. BATTENFIELD had approximately $1,500.00 invested into these pistols, which were re-sold approximately four days after he took possession of the pistols[12] for $2,200.00. BATTENFIELD's willingness to lower his price from $2,600.00 down to $2,200.00 shows that he had a substantial amount of profit built into these firearms and still made a profit after lowering the price.

### Text messages show the sale of a Staccato pistol for profit

---

[12] These pistols were not purchased with a "law letter", so BATTENFIELD could not take possession until ten days after he purchased them.

148. Based on my review of messages, from November 28, 2022, to January 1, 2023, BATTENFIELD and J.L. discussed and negotiated the price of a Staccato pistol. The conversation was a segue from a separate gun deal (Sig Sauer) where BATTENFIELD notified J.L. that he would wait to do the PPT "transfer" until January. BATTENFIELD told J.L. that he had two different models for sale, one of which was a Staccato P, that he said he would sell for $3,300. BATTENFIELD notified J.L. that the Staccato P was "brand new never fired anything done to it". This statement indicated that the firearm was a stock and unaltered OEM firearm with no modifications. BATTENFIELD also offered a Staccato XC for sale at $5,500, "Brand new". This statement indicated that the firearm was a stock and unaltered OEM firearm with no modification. The two agreed on the Staccato P for $3,000.00. BATTENFIELD later notified J.L. that he did not wish to sell those two Staccatos, and he offered a Staccato C2, "Never fired" for $3,500. This statement indicated that the firearm was a stock and unaltered OEM firearm with no modifications.

149. California DROS records confirm that the two met at Jim's Trading Post in Fresno California, on January 3, 2023, to conduct the PPT of a Staccato 2011 C2, 9mm pistol bearing serial # C22116369.

150. According to Staccato's website, the Staccato XC retails for $4,299. However, Staccato offers all law enforcement a 15% discount, which lowers the price of this firearm to $3,655 pre-tax. BATTENFIELD was offering the firearm at $5,500. According to Staccato's website, the Staccato P retails $2,499. With the 15% law enforcement discount, the price lowers to $2,124.15 pre-tax.

151. According to the records provided by Smokin' Barrel Firearms, the Staccato C2 was purchased by BATTENFIELD on December 05, 2022, for $2,315.68. This firearm was re-sold to J.L. on January 3, 2023, for $3,500. As of November 19, 2024, all Staccato firearms are not on the California approved roster.

152. Additionally, BATTENFIELD's statements regarding waiting approximately over a month to conduct the PPT, is significant to me based on my training and experience because it shows knowledge of wrongdoing. I know that firearms traffickers are aware that regulators monitor the time to sale, and so delaying the transfer after the firearm has been purchased shows BATTENFIELD's attempts to evade law enforcement detection. Furthermore, according to BATTENFIELD's administration at

Sanger PD, he is a department armorer for the agency's Glock pistols. The facts and circumstances shown above outline how BATTENFIELD would utilize his armorer skills to modify and customize Glocks, and other firearms to make them more appealing to purchasers (his customers), and therefore benefit his business of selling firearms without a license.

## V.    CONCLUSION

109.  The above facts set forth probable cause to believe that Daniel BATTENFIELD violated 18 USC 922(a)(1)(A), dealing firearms without a license, 18 USC 1001, making false statements to a federal agent, and 18 USC 922(a)(6), making false statements on ATF forms or during purchase of firearms.

110.  BATTENFIELD is in violation of 18 U.S.C. 922(a)(1)(A) because as described above, he repetitively purchased and resold firearms, including those firearms which only he could purchase because of his police officer status, while making a profit from those firearms.

111.  BATTENFIELD is in violation of 18 U.S.C. 1001 because, when interviewed on July 25, 2024, and August 9, 2024, he told agents that he had never taken orders for firearms and had never made a profit from firearms. As discussed above, on September 18, 2022, he took an order for a Sig Sauer P365 Macro from J.L. On October 26, 2022, he sold the Sig Sauer P365 macro bearing serial # 66F311389 for a profit and discussed making a profit from that firearm with J.L. (the purchaser).

112.  BATTENFIELD is in violation of 18 U.S.C. 922(a)(6) because as described above he took an order for a Sig Sauer P365 Macro from J.L. He ordered that firearm himself and on an ATF form 4473 on September 19, 2022, he indicated untruthfully that he was buying the gun for himself rather than for J.L. BATTENFIELD later sold this firearm to J.L. on October 26, 2022.

//

//

//

113.    I request that an arrest warrant be issued for BATTENFIELD for these violations.


_Cortland Collins_
Cortland G. Collins
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives


Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this __**Dec 13, 2024**_____.


_____
THE HONORABLE STANLEY A. BOONE
UNITED STATES MAGISTRATE JUDGE


Reviewed as to form by:

/s/ *Robert L. Veneman Hughes*
Robert L. Veneman Hughes
Assistant U.S. Attorney